IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____
                                        :
UNITED STATES,                          :
                                        :     Nos. 22-1828, 24-1124
          *Appellee,*                   :
     v.                                 :
                                        :
George KRITOPOULOS,                     :
                                        :
          *Defendant-Appellant.*        :
_____        :

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR SUMMARY DISPOSITION.

The government's corrected motion for summary disposition must be denied and the government should be ordered to promptly file its responsive brief on the merits. As the defendant's appellate brief makes clear, the appellate arguments in this criminal appeal very clearly raise substantial and important constitutional questions of first impression and other significant legal questions that require plenary briefing and review, and they are all incorporated here by reference. The fact that the government has submitted a 23-page motion demonstrates that the complex legal issues in this case cannot be disposed of summarily. The structural error in CJA expert funding decisions by a trial judge, charged with conserving funds that also detract from the judiciary's budget, implicates the institutional integrity of this Court and the integrity and fairness of all criminal proceedings

involving CJA funding, and is a question this Circuit has an important interest in addressing. This type of structural error is neither waivable nor waived in this case. Nor has Mr. Kritopoulos waived any of his other claims for relief. All the questions Mr. Kritopoulos raises cannot be decided summarily as a matter of law, and require full and plenary briefing, oral argument, and normal judicial review.

This is an appeal from a fourteen-day jury trial and sentence, and summary disposition -- normally reserved for appeals clearly barred by a plea agreement's contractual appellate waiver or by clear lack of jurisdiction -- is inappropriate. The government's last-minute motions, filed on the due date for, and in lieu of, the government's appellate brief, are totally devoid of any authority whatsoever supporting summary dismissal of a substantial appeal raising serious structural errors, significant constitutional and other errors, from a trial disposition rather than a plea, and must be denied. The government's motion is remarkable for making arguments that cannot be decided as a matter of law; all the defendant's arguments require considered judicial review.

This Court has jurisdiction over both appeals, No. 22-1828 and 24-1124. The government makes no argument whatsoever that this Court lacks jurisdiction to hear any claim, or to hear the appeal from restitution, for it cannot – the Supreme Court in <u>Manrique v. United States</u>, 581 U.S. 116 (2017), expressly declined to hold that a second notice of appeal from an amended restitution order was a

jurisdictional requirement. There is no controlling authority for dismissing the twice-noticed restitution appeal. Mr. Kritopoulos' arguments in headings I and II regarding structural, constitutional and statutory abuse of discretion error in the denial of CJA funding also require vacation of the restitution order. The majority of Mr. Kritopoulos' arguments addressing restitution would survive even a dismissal of Appeal No. 24-1124, because this Court has jurisdiction over them by virtue of the notice of appeal filed from the original judgment order. Mr. Kritopoulos also alleges structural error in the violation of his 6th Amendment autonomy, and violation of due process, and action exceeding the court's statutory authority by entry of a restitution order and judgment without his personal assent and signature.

Furthermore, the record is not complete in this case, as this Court has ordered that the deferred Exhibit Appendix be filed after the government files its appellate response brief, and the defendant objects to summary disposition on an incomplete appellate record without being granted an opportunity to file his Exhibit Appendix. Furthermore, the government addresses only some, and not all, the claims raised in the defendant's brief, and there is no authority whatsoever, either in the local rule, the Federal Rules of Appellate Procedure, or in this Circuit's decisions, for the piecemeal summary disposition of a criminal appeal. Mr. Kritopoulos also asserts that summary disposition in criminal appeals generally,

and in his appeals in this case, under this Circuit's Local Rule, violates his rights to due process, equal protection, and to the statutory right to plenary review of his criminal appeal, and conflicts with the federal rules. Oral argument is required on this motion under Federal Rule of Appellate Procedure 34, which mandates oral argument "in every case" unless enumerated exceptions are met, and the government fails to assert, and therefore waives, any reason oral argument should not be granted.

**A. Standard for summary disposition.**

The Federal Rules of Appellate Procedure, prescribed by the Supreme Court and enacted by Congress, themselves do not provide for summary disposition of criminal appeals by motion without full briefing. Nor does any statute.

The government's Corrected Motion relies on the First Circuit's Local Rule 27.0(c), a procedural rule of this Circuit's creation. Several other circuits have similar and varied local rules, some don't, and there is disparity among the circuits in how summary dispositions are administered, in deadlines for the motions, and what circumstances warrant dismissal or summary affirmance. Defendants in each circuit face different procedural avenues and legal standards for disposition of their criminal appeals.

While a circuit court may establish local rules of appellate procedure to facilitate appellate review under the governing Rules, those local procedures

cannot go so far as to abridge, alter or infringe upon the substantive statutory or constitutional rights to criminal appeal, and may not be inconsistent with the Federal Rules of Appellate Procedure. Even the Supreme Court's authority to abridge substantive rights is circumscribed – the Supreme Court's promulgated rules of practice and procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The Federal Rules of Appellate Procedure provide for full merits briefing for criminal appeals, plenary review by a panel, and according to Rule 34, oral argument "must be allowed in every case unless" a panel agrees the appeal is frivolous, dispositive issues have already been authoritatively decided, or that the decisional process would not be significantly aided.

First Circuit Local Rule 27.0(c), without distinguishing between civil or criminal appeals, states only that "the court may dismiss the appeal or other request for relief or affirm and enforce the judgment or order below if the court lacks jurisdiction, or if it shall clearly appear that no substantial question is presented." Furthermore, "[m]otions for such relief should be promptly filed when the occasion appears." 1st Cir. Local Rule 27.0(c). The government cites no authoritative First Circuit case that articulates any uniform standard for what constitutes "no substantial question" in a criminal appeal. It cites no authority for the proposition that filing a motion the day substantive briefing is due, in lieu of

that brief, is "prompt" or "when the occasion appears," and Mr. Kritopoulos asserts the motion is untimely. It is untimely under the plain language of the local rule because filing a motion in lieu of a substantive brief, for which no extension has been granted, on the day it is due, is not prompt under any dictionary or ordinary definition of the word -- it serves only to impose unnecessary procedural delay and additional briefing, and creates additional work for court staff, and is costly to the court and for the defendant. The toll the motions procedure exacts when invoked in the middle of merits briefing even creates a financial disincentive to denying motions for summary disposition.

Other circuits have articulated a high standard the government must meet to show "no substantial question" exists. In a civil prisoner appeal, the Federal Circuit required the government to establish its position "is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists." Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) (defendant's action raised criminal questions in Court of Federal Claims, a court of limited civil jurisdiction). In a civil case, the D.C. Circuit provided, "A party seeking summary disposition bears the heavy burden of demonstrating that the merits of his case are so clear that expedited action is justified. To summarily affirm an order of the district court, …[a] court must conclude that no benefit will be gained from further briefing and argument of the issues presented." Taxpayers

<u>Watchdog, Inc. v. Stanley</u>, 819 F.2d 294, 297-98 (D.C. Cir. 1987). Summary dispositions in criminal appeals are usually reserved for when an appeal is barred by a contractual appellate waiver contained in a guilty plea agreement (not the case here), or when a court clearly lacks jurisdiction (also not the case here) – and the government asserts neither. The government has cited no First Circuit precedent whatsoever for summary affirmance or dismissal of an appeal from a trial disposition. It fails to identify authority that forecloses judicial consideration of the issues raised here. It hopes against all hope it can avoid addressing the merits of this case, which raise serious institutional, structural, and constitutional problems. Furthermore, Mr. Kritopoulos has requested oral argument in this case, and the government has failed to articulate any reason oral argument is not warranted, and has therefore waived objection to oral argument.

Mr. Kritopoulos argues that Local Rule 27.0(c) is vague, as it articulates no standard governing what constitutes "no substantial question," that it exceeds this Circuit's authority when applied in criminal cases, and that it is inconsistent with, in conflict with, and abridges, a criminal defendant's statutory and constitutional rights to appeal, and with the Federal Rules of Appellate Procedure providing for plenary criminal appeals. <u>See</u> 28 U.S.C. § 2071.

There is no allegation here that Mr. Kritopoulos' arguments are incomprehensible or completely insubstantial, or that Mr. Kritopoulos' claims are barred as a matter of law.

Furthermore, courts generally are, and this court should be, reluctant to summarily dispose of an appeal involving questions of first impression.

**B. Mr. Kritopoulos' claims of structural error, constitutional error, and statutory error in Arguments I and II raise substantial questions that are neither waived, barred by authority, or susceptible to summary determination.**

Mr. Kritopoulos' arguments that there was structural and constitutional error both in the denial of CJA expert funds to challenge sentence-determinative lender loss, and in the CJA funding framework, and that there was reversible error when the court abused its discretion in denying an ex parte hearing and funding under 18 U.S.C § 3006A, are preserved and not waived, the structural error is not waivable, and all raise substantial questions that should be addressed on plenary briefing and after oral argument.   They also raise numerous questions of first impression that should not be decided by summary disposition.

Structural errors that affect the fundamental framework of indigent defense are not waivable.  The structural error introduced when a presiding district judge administers public funds for the defense that are part of the judiciary's budget, while at the same time adjudicating issues in the case on the

merits, compromises the district court's impartiality and independence, creates serious conflicts of interest, bias, and undermines the independence, zeal, and representation of appointed counsel. The record in this case evidences these structural errors because impermissible financial considerations eclipsed and supplanted the merits of the defendant's request for funds. It is a structural unconstitutional error that is not waivable. Both the judge and defense counsel are participants in the structural error, and it undermines the fundamental fairness and integrity of the trial framework. The interest at stake is the "interest in an impartial and independent federal adjudication of claims within the judicial power of the United States." Commodity Futures Trading Com. v. Schor, 478 U.S. 833, 850 (1986). Where structural error undermines judicial independence, it "threatens the institutional integrity of the Judicial Branch," and the Supreme Court has held that "notions of consent and waiver cannot be dispositive" where there are "institutional interests that the parties cannot be expected to protect." Id. at 851.

The government ignores that Mr. Kritopoulos' constitutional claims of error are preserved, were prejudicial, and require reversal. The government cannot and has not met its heavy burden of demonstrating those deprivations were harmless beyond all reasonable doubt. The defense's and the government's agreement to an applicable guideline loss range was expressly

limited in scope to the range alone, and nothing else. There was no broad waiver of any and all rights to raise all sentencing defenses. The unconstitutional denial of expert funds deprived Mr. Kritopoulos of several viable sentencing defenses (the ability to demonstrate a correct guidelines loss calculation, and the ability to seek a variance because market values undermined the validity of those loss calculations), and seriously handicapped the defense's negotiating position, which casts an unconstitutional taint on the voluntariness of the defense's agreement, and it also left him without any expertise to defend against the restitution claims.

The government's fervent wish for a broad waiver that sweeps away all the viable sentencing arguments has no support in this Circuit's decisional law, it violates principles of equity, and it violates this circuit's norms of construing appellate waivers narrowly and against the government, and as a matter of policy, it would perpetuate and condone the fundamentally unfair practice of depriving an indigent defendant of viable defenses at sentencing by cutting the legs off defense funding.

Mr. Kritopoulos was deprived of significant defenses well outside the scope of the agreed upon range, and all those arguments were preserved by not just one, but two motions for expert funds and sentencing continuances, both of which were denied, one outrightly, the other by inaction, by the district court.

None of the cases the government cites on pages 14-15 of its motion support a broad waiver of defenses that goes beyond the plain language and limited scope of the agreement to a range in this case. None of the cited cases involved or addressed the deprivation of a sentencing defense by the denial of expert funds. And none was decided by summary disposition.

United States v. Rodriguez-Torres, 939 F.3d 16 (1st Cir. 2019), did not involve a broad waiver of all sentencing arguments – the defendant's appellate objections to drug quantity calculations in that case were never objected to nor preserved below, where Rodriguez made no objections to drug quantity in the PSR nor at sentencing. Rodriguez-Torres was a plenary appeal from a trial, and was not decided by summary disposition. In contrast, Mr. Kritopoulos objected to loss calculations in the PSR, and filed two motions for expert funds and for continuances to contest loss calculations, the first one over a month before sentencing, and these were denied, and thus preserved the issue for appeal, and Mr. Kritopoulos was not required to continuously object to the denial of expert funds or the requested continuances, and risk the ire of his sentencing judge, to preserve the issue for appeal. Kritopoulos expressly did not stipulate to any particular loss amount, and the government itself made that explicit statement at sentencing: "we've agreed on the range, not the actual amount." (T6.201; T6.224; Def. Br. at 43, 64.) The defense did not stipulate it was not entitled to

seek a variance, or that it was not entitled to argue loss was overstated. Furthermore, Mr. Kritopoulos is not contesting the agreed-upon sentencing range on appeal. He is contesting the deprivation of a defense in presenting proof of a loss calculation that actually supports the range, which would have undermined the government's arguments it was doing Mr. Kritopoulos a favor. He is contesting the deprivation of a defense to the government's prejudicial arguments at sentencing that the loss calculation was actually over $3 million dollars and thus higher than the agreed upon range. He is contesting the total deprivation of the right to argue for a variance based on market value, which (the government does not contest) was a viable defense, but one the defense could not raise without the assistance of an expert.

United States v. Rivera-Orta, No. 11-1927, 500 Fed. Appx. 1 (1st Cir. 2013), unlike Mr. Kritopoulos' trial appeal, involved an appeal dismissed pursuant to a contractual guilty plea agreement to both a sentencing enhancement and its factual predicate, and the contractual appellate waiver in the agreement, and the barred defenses were raised for the first time on appeal. Rivera-Orta is inapposite and not authoritative in Mr. Kritopoulos' trial appeal, where his arguments are preserved, as described above. Rivera-Orta was decided following plenary briefing, and not by summary disposition.

United States v. Silva, No. 07-2320, 554 F.3d 13 (1st Cir. 2009), is also inapposite. In Silva's appeal from a trial disposition, he waived an appellate argument, raised for the first time on appeal, that under Apprendi his drug value calculation should have been decided by a jury, because both his sentencing memo and sentencing arguments agreed to the specific drug value involved. Mr. Kritopoulos in contrast, asserts preserved arguments, as described above, that fall outside the scope of the agreed range and are not barred by it. Notably, Silva was decided after plenary briefing and oral argument, and not by summary disposition.

United States v. Serrano Beauvaix, No. 02-2286, 400 F.3d 50 (1st Cir. 2005), is also inapposite. The appeal from a contractual guilty plea agreement involved a contractual stipulation to both an offense level enhancement and the predicate facts supporting it. The defendant did not raise, and the case did not address, arguments other than those barred by the stipulations. Serrano-Beauvaix was also decided after plenary briefing and oral argument, and not by summary disposition.

Just as circuit courts construe contractual appellate waivers narrowly, in favor of the defendant's appeal and against the government, because the government has vastly superior bargaining position, the stipulation in this case to the applicable range for loss can encompass only what both parties expressly

stated it encompassed, the applicable range, and not a calculated loss figure, nor other sentencing arguments such as variance from that range that could only be asserted with an expert. United States v. Sanchez-Colberg, 856 F.3d 180, 184 (1st Cir. 2017) ("we construe plea-agreement ambiguity against the government" and "hold that the appeal is not within the appeal-waiver provision's scope"); United States v. McGlashan, 78 F.4th 1, 9 (1st Cir. 2023) (same); United States v. Kamadeen Idowu Oladimeji, 463 F.3d 152, 157 (2d Cir. 2006) (courts "apply appeal-waiver provisions 'narrowly' and construe them 'strictly against the Government,' in recognition of the fact that prosecutors' bargaining power generally exceeds that of defendants"). The government's urged broad and expansive waiver of all the arguments Mr. Kritopoulos could have raised with the assistance of the expert is contrary to First Circuit precedent. A broad waiver is particularly inappropriate given the inequity inherent in Mr. Kritopoulos' impaired bargaining position at the time he entered into the agreement to a range – he was denied the assistance of an expert that could have obviated the need for such an agreement, and it was impossible to raise material defenses without the expert.

The government should be equitably precluded, or judicially estopped, from taking the position here that the range stipulation broadly waived all rights to present a specific loss figure, because the government itself explicitly carved

any specific loss figure <u>out</u> of the agreement, informing the court they had "agreed on the range, not the actual amount." It then took advantage of that carve-out to argue at sentencing that the actual and correct calculation of losses was much higher than the stipulated range, because the conspiracy "caused at least $3 million in losses." (T6.211.) Without an expert, Mr. Kritopoulos could not argue to the contrary. Taking a contrary position on appeal to deprive Mr. Kritopoulos of his right to appeal is seriously prejudicial. <u>United States v. Levasseur</u>, 846 F.3d 786, 798, 802 (1st Cir. 1988) ("Court is not hesitant to hold that the government of the United States is, like any other litigant, subject to judicial estoppel whenever that doctrine is properly invoked").

The government's argument that the district court never denied the defense its requested real estate and mortgage fraud expert defies credulity. The defendant timely moved twice for an expert and continuance, and never received an ex parte hearing after either ex parte request; the first request was explicitly "denied," and the renewed request was denied by predjudicial inaction. Mr. Kritopoulos was never awarded funds for an expert, and instead was ordered to proceed to sentencing and discussions with the government without expert assistance. That's a denial plain and simple. The government's motion totally fails to mention or address the second ex parte filing requesting expert funds and continuance. And it ignores that the district court repeatedly

cited its aversion to spending money on the defense, rather than addressing the merits of the request, in an adversarial setting, that it entertained arguments opposing the request, and it does not dispute that the court ordered the defense into the arena to negotiate with the government with its hands tied behind its back, with no real estate expert, and no negotiating power.

The failure to rule on a motion is a denial of a motion. And the additional denial of the continuance necessary for expert assistance makes the denial abundantly clear. United States v. Depew, 210 F.3d 1061, 1065 (9th Cir. 2000) ("The district court never ruled on the motion. We treat the district court's failure to rule on Depew's motion [pursuant to § 3006A for expert funds] as a denial of it."); In re Grand Jury Subpoena, 274 F.3d 563, 577 (1st Cir. 2001) ("it has long been accepted that a trial court may implicitly deny a motion by entering judgment inconsistent with it").

The government ignores that this is preserved error, and grounds for reversal. Mr. Kritopoulos's opening brief cited controlling authority requiring reversal where the district court refused to hold an ex parte hearing on an application for expert funds, and where the defense was denied a necessary expert that a paying client would engage, and the government utterly fails to address these. See Def. Br. at 63-64, citing United States v. Abreu, 202 F.3d 386, 388 (1st Cir. 2000) (vacating and remanding for failure to hold ex parte

hearing on ex parte request for sentencing expert), United States v. Innarelli, 524 F.3d 286, 293 (1st Cir. 2008) (paying defendant had retained an expert and successfully challenged lender loss); see also United States Durant, 545 F.2d 828, 827-28 (2d Cir. 1976) (reversing for denial of fingerprint expert to avoid expense); United States v. Theriault, 440 F.2d 713, 716 (5th Cir. 1971) (reversing for failure to hold ex parte hearing).

There was no ex parte hearing here, twice. No funds were awarded for expert assistance, twice.

The government cannot and has not carried its burden of demonstrating that the unconstitutional deprivation of a defense was harmless beyond all reasonable doubt. And Mr. Kritopoulos' brief amply demonstrates that with an expert he could have presented a more accurate lower loss figure that merited the lower range, and persuasive evidence that even more correct guidelines loss calculations vastly overstated loss and entitled him to a variance from that range, and that he was thereby prejudiced. Undersigned counsel would never have been able to make the arguments she made in her brief without the help of her husband, a Vermont real estate lawyer with some knowledge of foreclosures, who assisted her by telling her that lenders usually bid their stake in the property at foreclosure (ergo the "credit bid," a phrase never used by the government at trial), and assisted with maddening deed research.

There is no evidence whatsoever that the court would have imposed the exact same sentence if Mr. Kritopoulos had been able to raise his defenses, and the government's conclusory arguments are not a magical substitute for that missing evidence. There is no evidence whatsoever that the sentencing judge would <u>not</u> have varied, and in fact there <u>is</u> evidence that she <u>would</u> have varied because she repeatedly recognized that lower market values could support a variance.

The government does not deny that the defenses Mr. Kritopoulos could have made are viable. It does not deny that Mr. Kritopoulos could have shown market values were vastly higher than the amounts lenders recovered at foreclosure and could have demonstrated they squandered value and inflated losses. It does not deny that an expert would also have enabled the defendant to establish that he was actually entitled to the lower guidelines loss calculation. And it does not deny that evidence of higher market values are a grounds for a further variance from the resulting lower guideline range.

The government's recommendations at sentencing are irrelevant, they did not actually propose a loss-based variance, and the court did not adopt any loss-based variance. The court's references to overstated loss at sentencing were pure lip-service, and none of her statements were reflected in the actual sentence imposed.

The court declined to vary for overstated loss, or for any other reason. Instead she issued a guidelines sentence, which turned on loss calculation. And she provided a guidelines departure for Mr. Kritopoulos' extremely poor and serious physical condition that requires repeated surgical interventions and recoveries, which merited a large departure irrespective of loss.

The district court decidedly did <u>not</u> choose a sentence "irrespective of" the Guidelines range, or "independent of" the Guidelines. She imposed a straight-up Guidelines sentence, with a Guidelines departure. (<u>See</u> SA.212 (Box "D" in Section IV for sentences outside the guideline system is not checked.).)

Loss calculation was the most significant driver of a significantly increased guidelines range, and Mr. Kritopoulos should have been entitled to argue for a variance from it, and to demonstrate a correct guidelines calculation placed him squarely within a lower range, and to foreclose government argument that the correct calculation supported a higher range, and that the stipulated range was a gift.

Furthermore, the district court repeatedly recognized that an expert and loss calculations were material to both sentencing and restitution. (Def. Br. at 26, 27, 61.) Mr. Kritopoulos had no expert assistance for restitution, which also seriously prejudiced him.

The sentence, including the term of incarceration and the imposition of restitution, must be vacated and remanded for resentencing.

**C. This Court has jurisdiction over the restitution challenges in Appeal No. 22-1828 and in Appeal No. 24-1124 and neither should be dismissed.**

This Court has jurisdiction over the restitution appeal. The government does not assert, and cannot assert, and has waived any assertion, that this court lacks jurisdiction over the restitution appeal generally, or that this court lacks jurisdiction over appeal No. 24-1124. Indeed, the Supreme Court in <u>Manrique v. United States</u>, 581 U.S. 116 (2017), expressly declined to go so far as to hold that the requirement for a second notice of appeal from an order imposing restitution in a deferred restitution case was jurisdictional, as the government had urged in its merits briefing in <u>Manrique</u>. <u>See</u> <u>Manrique</u>, 581 U.S. at 120-21. It would only go so far as to hold that "a timely notice of appeal from an amended judgment imposing restitution is at least a mandatory claim-processing rule." <u>Id.</u> at 121. Unlike Mr. Kritopoulos, the defendant in <u>Manrique</u> failed to file any notice of appeal at all from the amended judgment imposing restitution, the government objected, and the Supreme Court held the court of appeals "properly declined to consider his challenge to the amount of restitution imposed." <u>Id.</u> at 125.

Claim processing rules are subject to equitable exceptions such as waiver and forfeiture. And the "Supreme Court has 'reserved whether mandatory claim processing rules may be subject to equitable exceptions' other than waiver or forfeiture." United States v. Russo, 453 F. Supp. 3d 270, 276 (S.D.N.Y. April 14, 2020).

Mr. Kritopoulos argues that the government may not equitably assert, and this Court cannot equitably rule, that this Court cannot address restitution challenges raised in both of his appeals where the record fails to evidence Mr. Kritopoulos' personal assent or signature to a restitution settlement in violation of due process and the Sixth Amendment, and Mr. Kritopoulos did not assent to the restitution order or judgment, and where the district court failed to comply with Rule 32(j)(1)(B) both at the original sentencing and when the amended judgment order was entered by notifying Mr. Kritopoulos of his right to appeal his sentence, which was prejudicial error, and where there was no record of service nor notice to the defendant of either the restitution motion, the restitution order, or the restitution amended judgment. In addition, his claims cannot equitably be ignored where the failure to file a notice of appeal from the first amended judgment was due to ineffective assistance of counsel.

Here, Mr. Kritopoulos <u>has</u> filed a timely notice of appeal from the Second Amended Judgment which was corrected to include the order that

restitution be joint and several. And he <u>has</u> filed a timely notice of appeal from the sentence imposed on him and Original Judgment, which sentenced him to restitution, with the determination deferred to a later date.

There were three judgments in Mr. Kritopoulos' case:

(1) At sentencing on October 21, 2022, the judge pronounced, "I plan to impose full restitution on whatever the banks want," that "the money would go directly to the banks," and that conditions of supervised release would include restitution. (T6.241.) The Original Judgment, Doc. 259, entered October 27, 2022, specified that as a condition of release, the balance of restitution must be paid according to a court-ordered repayment schedule, and specified that the determination of restitution "is deferred until 12/16/2022," (R.235, 239).

(2) the First Amended Judgment entered February 1, 2023, Doc. 278, specified the restitution ordered, $ 2,238,354.19, and attached a chart listing the victims (R.248); and

(3) the Second Amended Judgment entered December 21, 2023, Doc. 338, corrected the judgment to specify that restitution was joint and several, see R.261.

Mr. Kritopoulos filed two notices of appeal -- from the Original Judgment and the Second Amended Judgment:

(1) The first notice of appeal, timely filed October 28, 2022, from the original judgment imposed at sentencing Oct. 21, 2022, and in the Original Judgment entered October 27, 2022.

(2) His attorney failed to file a notice of appeal from the First Amended Judgment. Mr. Kritopoulos was already incarcerated at the time.

(3) Undersigned appellate counsel timely filed a notice of appeal from the Second Amended Judgment on Dec. 29, 2023.

Where the appellate court already had jurisdiction over the original appeal, that timely second notice of appeal should, in the circumstances of this case, for all the equitable reasons cited above, satisfy the claims processing rule.

The distinction between substantive and non-substantive changes to a judgment has no relevance to claim processing rules, and is only relevant to whether a notice of appeal can confer jurisdiction over a newly appealed matter. Indeed, all the cases the government cites addressing the substantive/non-substantive distinction have involved notices of appeals that were required to confer jurisdiction over a newly appealed matter, because jurisdiction did not already exist by virtue of a trial or sentencing appeal. To the extent distinction between corrections that are substantive or nonsubstantive has any relevance to

notice of appeals that serve only claim processing purposes, and not jurisdiction-conferring purposes, Mr. Kritopoulos argues the amended restitution order was substantive, because the correction substantively alters his rights, financial obligations, and recourses in joint liability with another defendant. (Def. Br. at 79 ("Second Amended Judgment . . .corrected the Amended Judgment to reflect that restitution was joint and several, . . .a clerical error omitting a substantive provision of the judge's order.").)

Neither this Circuit nor the Supreme Court has squarely held that a second notice of appeal from a second amended judgment, where the court already had jurisdiction over the appeal of the conviction and sentence that includes a judgment calling for restitution, is not valid to challenge the substance of the restitution order.

And there is no authority holding that where a court has jurisdiction over an appeal from a judgment of restitution, the defendant may not challenge the court's statutory and constitutional authority to order and impose a restitution obligation purported to be a settlement without evidence of signature or personal assent, or evidence of knowing, voluntary and intelligent admission of the restitution obligation and waiver of the MVRA's due process protections, or that the defendant may not challenge the constitutionality of the failure to obtain jury findings on restitution. Those arguments do not turn on the dollar

amount of restitution specified in the amended judgment. They remain part of this appeal even if this Court were to hold that Mr. Kritopoulos cannot challenge the restitution dollar amounts specified in the first or second amended orders.

Although the government urges that the challenge to the restitution award contained in the First Amended Judgment is untimely because no notice of appeal was filed from that judgment, and that the Second Amended Judgment did not restart the period in which the notice of appeal needed to be filed, there is no settled law that addresses these questions – they are questions of first impression that warrant full briefing on plenary review, not summary disposition.

The cases the government cites are not apposite, not authoritative, and not controlling, and thus cannot support summary dismissal. All address situations where the court did <u>not</u> already have jurisdiction over the sentencing appeal and original judgment calling for restitution, and where a newly filed notice of appeal was required to confer jurisdiction over the defendant's claims. That is not Mr. Kritopoulos' case.

First, <u>United States v. Santiago-Lugo</u>, No. 18-2112, 2019 WL 118686817 (1st Cir. Oct. 1 2019), is an unpublished, non-authoritative decision that cannot support summary disposition. There are no similarities to Mr.

Kritopoulos' case. Santiago-Lugo appealed, totally uncounseled and pro se, from the denial of a motion to reduce his sentence under 18 U.S.C. § 3582(c), and from a forfeiture order entered but never incorporated into any judgment 22 years prior, in 1996, as part of his conviction and sentence. In dicta, the panel suggested that any judgment amended to incorporate the omitted order would not be appealable anyways because the correction was non-substantive. But there was no amended judgment, and no claim that the period for review had restarted. The question of whether revisions could or could not restart the period for appellate review had no application to the case.

United States v. Portillo, 363 F.3d 1161 (11th Cir. 2004), a non-controlling and non-authoritative decision from another circuit, also addresses an entirely different procedural posture. Four years after the defendant's conviction and sentence, which were never appealed, the court sua sponte made numerous alterations to the restitution judgment. The decision has no persuasive value, particularly because Mr. Portillo appealed uncounseled and pro se, and because unlike Mr. Kritopoulos' case, Portillo's appeal from the amended judgment was the only appeal before the court. The decision offers no support for summary disposition in the very different procedural posture of Mr. Kritopoulos' appeal, where jurisdiction is not at issue.

Next, the government disputes the merits of the defendant's argument that he was erroneously never informed of the need to appeal, or the right to appeal, the amended restitution order, as required by Fed. R. Crim. P. 32(j)(1)(B). It asserts that §3664(c) provides that the Rule does not apply to restitution proceedings.

This Circuit has never held that Fed. R. Crim. P. 32(j)(1)(B) does not apply to the entry of restitution judgments, which are sentencing proceedings. If it did, it would be a novel question of first impression, not appropriate for summary disposition. There is no question or debate that Rule 32(j)(1)(B) applies to sentencing proceedings, which is what Mr. Kritopoulos attended on October 21, 2022, when the court imposed his sentence and pronounced that restitution would be imposed as part of the sentence, whatever the banks wanted, and set a date for a deferred restitution proceeding. He received no required notice of his right to appeal the restitution imposed, nor his need to file a separate notice of appeal from the amended restitution judgment, either at sentencing or at any time thereafter, and it was harmful, prejudicial error. This argument cannot be summarily dismissed – it is part of Mr. Kritopoulos' original appeal -- this court has jurisdiction over it by virtue of the first notice of appeal. Consideration of the issue does not turn on the validity of any second notice of appeal.

The government's arguments on this motion directly conflict with representations the government made to the Supreme Court in <u>Manrique</u>, where several justices at oral argument were concerned with the prejudicial error in the district court's failure to inform Manrique of the right and the need to file a separate notice of appeal from his amended restitution order either at sentencing or when the restitution order was entered.

The <u>Manrique</u> dissent noted that the government at oral argument expressly "agree[d] that the District Court was 'absolutely' required to advise Manrique of his right to appeal the restitution order," and anticipated "that the required advice 'will prevent cases like this form arising again in the future.' Tr. of Oral Arg. 28." <u>Manrique</u>, 581 U.S. at 127-28 (JJ. Ginsberg and Sotomayor, dissenting); <u>see also</u> Oral argument available at <u>https://www.oyez.org/cases/2016/15-7250</u> at 28-29. The government should be bound by its representations to the Court.

Mr. Kritopoulos has requested vacation of restitution as a relief for every argument raised in his brief, and argued that if this Circuit did not grant relief on those arguments, it should alternatively remand for further findings on counsel's ineffective assistance regarding restitution, so that his ineffective assistance of counsel claim could be judicially reviewed on direct review. He raises the arguments, and refers to the matters outside the record demonstrating

counsel's serious errors in representation and calculations (which the government does not dispute), to establish that he could both raise a meritorious claim, and definitively establish prejudice. He is not asking this Court to make a ruling on an undeveloped record. He is asking for a United States v. Constant remand if he is not granted relief on his other appellate claims. See Def. Br. at 78, citing United States v. Constant, 814 F.3d 570, 578-79 (1st Cir. 2016).

The government hopes this Circuit will dismiss his claim of ineffective assistance outrightly instead, attaching a non-authoritative and unpublished summary order in defendant James Schultz's appeal. A review of the docket in Shultz' appeal, number 15-2267, reveals that Mr. Shultz was incarcerated, appealed uncounseled and pro se, and apparently was not aware of precedent holding his claim of ineffective assistance for restitution was not cognizable on a § 2255, and he did not ask for a Constant remand, and the summary order dismissing his claim left him with no hope for judicial review.

If Mr. Kritopoulos is not granted relief by vacation of restitution for all the other arguments raised in his brief, a remand under Constant is necessary because the serious errors in this case and counsel's ineffectiveness, which are not cognizable on a § 2255 motion, would otherwise go uncorrected, and they are likely to be repeated in other cases and evade judicial review.

All the government's arguments for summary affirmance and dismissal fail.  The government's motion should be denied.

Respectfully submitted,

/s/ Ines McGillion

Dated:  May 15, 2024

_____
USCOA No.  1159609
INES MCGILLION LAW OFFICES, PLLC
P.O. Box 212
Putney, VT  05346
(646) 246-3868
ines@mcgillionlaw.com

CERTIFICATE OF COMPLIANCE

1. Counsel on this day has sought leave to exceed the type-volume limitation of 5,200 words for motion responses in order to file this motion of 6,500 words.

2. This motion complies with the typeface and style requirements of Fed. R. App. P. 32(a)

CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2024, I electronically filed the Defendant's Opposition with the Clerk of Court for the United States Court of Appeals for the First Circuit using the CM/ECF system, which will provide service to registered NEF parties, including opposing counsel AUSA Mark Quinlivan.

/s/ Ines McGillion